IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MANUEL COLON            : Civil No. 1:25-CV-2383
                           :
     Plaintiff,             :
                           :
       v.                :
                           : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,         :
Commissioner of Social Security,    :
                           :
     Defendant.          :

## MEMORANDUM OPINION

## I.     Introduction

Manuel Colon filed an application under Title XVI of the Social Security Act for supplemental security income on October 13, 2023.[1] Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Colon was not disabled from his alleged onset date of September 1, 1995, through February 26, 2025, the date of the ALJ's decision.[2]

Colon now appeals this decision, arguing that the decision is not supported by substantial evidence. After a review of the record, we agree

---

[1] Tr. 17.
[2] Tr. 17, 29.

and conclude that the ALJ's decision is not supported by substantial evidence.    Therefore, we will remand this matter for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case

Colon filed for supplemental security income, alleging disability due to bipolar, depression, trouble reading and writing, loss of right eye, and asthma.[3]    Colon was 36 years old at the time of his filing for disability, had a marginal education, and had no past relevant work.[4]

The medical record regarding Colon's impairments revealed that Colon has had mental health struggles for many years, as documented by his IQ score of 53 at age 14.[5]    In 2005, Colon lost his right eye in a motor vehicle accident.[6]

In April of 2022, Colon began mental health counseling while incarcerated at the State Correctional Institution ("SCI") in Rockview, Pennsylvania.[7]    He reported depressive episodes spanning as long as four

---

[3] Tr. 55.
[4] Tr. 27.
[5] Tr. 290.
[6] Tr. 547.
[7] Tr. 499.

days and voices in his head telling him to hurt people.[8]  In May, Colon was having periods of heightened aggression, particularly while using the anti-anxiety medication prescribed to him.[9]  But he reported things had been "good" in August, and he had not needed to use coping skills to manage his anger.[10]

In March of 2023, Colon's providers noted possible obstacles to his treatment, such as his depressed mood, lack of motivation, and social and/or environmental stressors.[11]  Around this time, Colon reported anxiety, agitation, and disinterest in being around others, while also noting he had not heard voices in his head for over a year and denying that he felt "overly depressed."[12]  His medication compliance was only 76% because Colon was sometimes "too lazy to get out of bed" to get his medications.[13]  By August of 2023, Colon was increasingly isolating himself and showing signs of anger, such as sweating and pacing.[14]

---

[8] *Id.*
[9] Tr. 494.
[10] Tr. 463.
[11] Tr. 432.
[12] Tr. 406.
[13] *Id.*
[14] Tr. 375-76.

Records from October of 2023 were more positive, noting Colon reported "doing well"[15] and that his "[t]hought process was linear[,] logical[,] and goal-oriented."[16]   Those records also show Colon was diagnosed with bipolar disorder.[17]

In January of 2024, after Colon was released from incarceration, he began treatment with Elena Besanceney at Northern Tier Counseling ("NTC") and reported auditory hallucinations that intensified when he was manic.[18]   Besanceney noted Colon met the diagnostic criteria for bipolar 1, schizophrenia, and anxiety disorder.[19]   In February of 2024, Colon reported flashbacks to the 2005 car accident where he lost his eye.[20] Since his release from jail, he had not experienced depression or anhedonia but had difficulty remaining asleep for more than four hours a night.[21]   In May of 2024, Colon reported depression, anger, and hearing voices, and in August he reported suffering more flashbacks to the car

---

[15] Tr. 351
[16] Tr. 360.
[17] *Id.*
[18] Tr 550-55.
[19] Tr. 556.
[20] Tr. 588.
[21] *Id.*

accident.[22]   An NTC counselor noted in September that Colon was "unreliable and confuses easily and often."[23]

It is against the backdrop of this record that an ALJ held a hearing on Colon's disability application on February 13, 2025.[24]  Colon and a Vocational Expert ("VE") both appeared and testified at this hearing.[25] Following this hearing, on February 26, 2025, the ALJ issued a decision denying the plaintiff's application for disability benefits.[26]  The ALJ first concluded that Colon had not engaged in substantial gainful activity since his application date of October 13, 2023.[27]  At Step 2 of the sequential analysis that governs disability claims, the ALJ found that the plaintiff suffered from the severe impairments of loss of right eye; asthma; attention deficit hyperactivity disorder; major depressive disorder, mild with anxious distress; and intellectual disorder.[28]  At Step 3, the ALJ concluded that none of these impairments met or equaled the

---

[22] Tr. 677, 697, 704.
[23] Tr. 725.
[24] Tr. 34-52.
[25] *Id.*
[26] Tr. 14-33.
[27] Tr. 19.
[28] *Id.*

5

severity of a listed impairment under the Commissioner's regulations.[29]

The ALJ also concluded that the evidence did not support finding

disability under either the "paragraph B" or "paragraph C" criteria.[30]

Between Steps 3 and 4, the ALJ then concluded that Colon:

> [H]a[d] the residual functional capacity to perform a full
> range of work at all exertional levels but with the following
> non-exertional limitations. The claimant retains the ability to
> understand and follow simple instructions and directions; can
> frequently interact with coworkers and supervisors
> throughout the workday; and can have frequent interaction
> with the public. The claimant should work in a position where
> he is not responsible for the work of others or required to
> supervise others and should work in a position with no more
> than occasional change in daily work processes or routine. The
> claimant is limited to jobs involving one and two step rote
> tasks with no production rate pace. He should not work at
> unprotected heights or with moving mechanical parts. He can
> have occasional exposure to humidity and wetness; dust,
> odors, fumes, and pulmonary irritants; and extremes of
> temperature. The claimant cannot perform work that requires
> precise depth perception, requires binocular vision, and
> requires peripheral vision on the right side.[31]

In reaching this residual functional capacity ("RFC")

determination, the ALJ considered the objective medical record detailed

---

[29] *Id.*

[30] Tr. 21-22.

[31] Tr. 22-23.

above, the medical opinion evidence, and Colon's reported symptoms. With respect to the medical opinion evidence, the ALJ first considered the opinion of consultative examiner and certified registered nurse practitioner ("CRNP") Kelly Shultz.  CRNP Shultz opined that Colon had environmental limitations and was blind in his right eye, but had no exertional, postural, or manipulative limitations.[32]  The ALJ found this opinion persuasive, supported by CRNP Shultz's "mostly negative" examination findings, and consistent with both the state agency consultants' opinions and the overall record, including Colon's activities of daily living.[33]

The ALJ next considered the opinions of two state agency consultants, Drs. Lorlyne Lange and Virginia Dato, who opined that the evidence did not demonstrate any physical impairments causing more than minimal limitations.[34]  The ALJ found these opinions persuasive,

---

[32] Tr. 26.

[33] *Id.*

[34] Tr. 26.

well supported by the explanations of each doctor, and consistent with both the overall record and the opinion of CRNP Shultz.[35]

The ALJ also found Dr. Jennifer Enigk's opinion persuasive. She found moderate limitations in Colon's abilities to carry out complex instructions, make judgments on complex work-related decisions, and respond appropriately to both usual work situations and to changes in a routine work setting.[36] She also found Colon was mildly limited in understanding and remembering complex instructions and making judgments on simple workplace decisions.[37] The ALJ noted this opinion was supported by Dr. Enigk's own examination findings and consistent with other evidence, including the State agency consultant opinions, Colon's activities, and certain clinical findings.[38]

Next, the ALJ considered the opinions of two State agency mental health consultants: Drs. John Gavazzi and Karen Weitzer. Dr. Gavazzi opined Colon could make simple decisions, maintain regular attendance

---

[35] *Id.*
[36] Tr. 26.
[37] *Id.*
[38] *Id.*

and be punctual, carry out very short and simple instructions, perform one and two step tasks, maintain socially appropriate behavior, perform personal care functions to maintain personal hygiene, and function in production-oriented jobs with little independent decision making.[39]  Dr. Weitzner repeated this assessment verbatim.[40]  The ALJ found these opinions persuasive, noting they were supported by the doctors' own explanations and consistent with Dr. Enigk's opinion, Colon's activities, and clinical findings.[41]

The ALJ also considered the opinion of Dr. Joseph McNamara but found that it lacked a description of functional limitations.  The ALJ therefore considered that opinion only as medical evidence, and not opinion evidence, reasoning that the lack of a functional limitation discussion meant it was "not a clear medical opinion."[42]

The ALJ was not persuaded by Elena Besanceney's opinion. Besanceney opined that Colon had some marked and extreme mental

---

[39] Tr. 26.
[40] Tr. 27, 61, 71.
[41] Tr. 27.
[42] Tr. 27.

9

limitations, would be off task more than a third of a workday, and would be absent from work at least three days a month.[43]  The ALJ concluded that this opinion was not supported by Besanceney's own treatment notes, which showed "good attention, an appropriate affect, a normal mood, intact memory, and intact judgment/insight [,]" and was inconsistent with other evidence, including other medical opinions and certain clinical records.[44]

Lastly, the ALJ jointly considered the opinions of two consultative examiners, Drs. Seth Rigberg and Amanda Slowik, and found them "less persuasive."[45]  He noted that these opinions "were not supported by examination findings since the application date" and "not entirely consistent" with other evidence, such as the opinions of Drs. Enigk, Gavazzi, and Weitzer, and certain clinical findings.[46]

With respect to Colon's symptoms, the ALJ found that Colon's statements concerning the intensity, persistence, and limiting effects of

---

[43] Tr. 27.
[44] *Id.*
[45] Tr. 27
[46] *Id.*

his impairments were not entirely consistent with the medical evidence.[47] The plaintiff testified that he lived with a friend who drove him to his therapy appointments, he took medications for his mental health without side effects, and he was blind in his right eye.[48]  Colon added that his friend assisted him with activities of daily living, such as shopping, cooking, laundry, and that he struggled to sleep more than three or four hours a night because of flashbacks and vivid dreams of his car accident and his family.[49]

The ALJ ultimately found Colon's testimony to be inconsistent with the objective clinical findings.[50]  The ALJ recounted the objective evidence during the alleged disability period, including that Colon is blind in his right eye but that otherwise his physical clinical findings are "essentially negative."[51]  The ALJ also noted that the record was "fairly consistent that [Colon] has an intellectual disorder [,]" citing evidence that Colon had mental health impairments, including IQ scores of 56 and

---

[47] Tr. 25.
[48] Tr. 40-43.
[49] Tr. 44-45.
[50] Tr. 25.
[51] Tr. 23.

57, below average cognitive functioning, and intellectual functioning that was "likely" impaired.[52]  Ultimately, the ALJ concluded that Colon was not as limited as he alleged.

Having made these findings, the ALJ found at Step 4 that Colon had no relevant past work but found at Step 5 that he could perform the occupations of marker, router, and inspector and hand packager.[53] Accordingly, the ALJ found that Colon had not met the stringent standard prescribed for disability benefits and denied his claim.[54]

This appeal followed.  On appeal, Colon argues, *inter alia*, that the ALJ incorrectly considered certain medical opinions.  This case is fully briefed and is therefore ripe for resolution.  For the reasons set forth below, we will remand this matter for further consideration by the Commissioner.

---

[52] Tr. 24.
[53] Tr. 27-28.
[54] Tr. 29.

III.    Discussion

A.    Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[55]   Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[56]    Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[57]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[58]   However, where there has been an adequately developed factual record, substantial evidence may be "something less than the

---

[55] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[56] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[57] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[58] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

13

weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[59]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[60]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[61]  Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[62]  Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is

---

[59] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[60] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

[61] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[62] *Id.*

supported by substantial evidence and was based upon a correct application of the law.[63]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[64] Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[65] This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just

---

[63] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[64] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[65] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

15

conclusory statements.[66]    Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[67]

## B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[68] This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[69] To receive benefits under Title II of the Social Security Act,

---

[66] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

[67] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

[68] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

[69] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

16

a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[70]

In making this determination, the ALJ follows a five-step evaluation.[71]  The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[72]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[73]  In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-

---

[70] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[71] 20 C.F.R. §§404.1520(a), 416.920(a).
[72]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).
[73] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

severe impairments identified by the ALJ at step two of his or her analysis.[74] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[75]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[76] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[77]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have

---

[74] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[75] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[76] *Mason*, 994 F.2d at 1064.

[77] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

18

taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[78]   Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[79]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.   Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[80] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.   On the other hand, when no medical opinion supports a disability finding or

---

[78] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).
[79] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).
[80] *Biller*, 962 F. Supp. 2d at 778–79.

19

when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[81]   Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[82]

## C.    Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[83]  Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[84]  Supportability means "[t]he more relevant the objective medical evidence and supporting

---

[81] *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.
[82] *Burns,* 312 F.3d 113.
[83] 20 C.F.R. § 404.1520c(c).
[84] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

20

explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[85]  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[86]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[87]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[88]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[89]   On the other hand, in cases where no medical opinion credibly supports the claimant's

---

[85] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[86] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[87] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

[88] *Mason*, 994 F.2d at 1066.

[89] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[90]

### D.    This Case will be Remanded.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests,"[91] and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."[92]  After consideration, we conclude that the ALJ's RFC determination is not supported by substantial evidence.

Colon argues that the ALJ erred in assessing medical opinions from Drs. Rigberg and Slowik.  In discussing the supportability of those opinions, the ALJ wrote only that these "opinions were not supported by examination findings since the application date [.]"[93]  Colon argues that is not an effective consideration of supportability.  We agree.

---

[90] *Cummings*, 129 F. Supp. 3d at 214–15.
[91] *Cotter*, 642 F.2d at 704.
[92] *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).
[93] Tr. 27.

When considering supportability, the ALJ is directed to contemplate that "[t]he more relevant the objective medical evidence and supporting explanations *presented by a medical source* are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."[94]  That language clearly indicates supportability is judged by the internal references a medical opinion source includes in their opinion.  As one court articulated, "an ALJ does not address the support provided by a medical source for his or her opinion by articulating the consistency of the opinion with the evidence from other sources."[95]

We conclude the ALJ did not properly analyze supportability for these two opinions.  That these opinions did not, in the ALJ's view, align with examinations performed years after these opinions were issued goes to their *consistency*, not the support embedded within the opinions.  While we are hesitant to remand over narrow technical distinctions in

---

[94] 20 C.F.R. § 416.920c(c)(1) (emphasis added).

[95] *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 397 (E.D. Pa. 2023).

the ALJ's language, given that supportability is one of only two factors the ALJ is required to explicitly consider,[96] and the evidence the ALJ cited here is indisputably not relevant to supportability, we are constrained to conclude that the ALJ erred in discussing the supportability of these opinions.

Further, we conclude that the error is not harmless. Social Security appeals are subject to harmless error analysis.[97] Under the harmless error analysis, a remand is warranted only if the error "prejudices a party's 'substantial rights'"; that is, if the error "likely affects the outcome of the proceeding, . . ."[98] Here, both Drs. Rigberg and Slowik opined Colon had issues with concentration and maintaining a regular schedule.[99] Importantly, Dr. Slowik found that Colon was "markedly" limited in two areas of mental functioning—which, if found persuasive, would qualify Colon for disability under the paragraph B criteria.[100] Accordingly, the

---

[96] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).
[97] *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).
[98] *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014).
[99] Tr. 307, 311-312.
[100] Tr. 311-12.

24

ALJ's error in his consideration of the medical opinion evidence is not harmless, and a remand is required. [101]

While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter.  Rather, that task is left to the ALJ on remand.

## IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner will be REMANDED for further consideration.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: June 23, 2026.

---

[101] Because we conclude that this issue necessitates remand, we do not reach consideration of the plaintiff's other claims of error.